LINDEMANN *v.* AMERICAN INSURANCE CO. OF NEWARK, NEW JERSEY.

1. INSURANCE—PARTIES—REAL PARTY IN INTEREST—STATUTES.
    Where insurance companies who had insured property after its conveyance subject to mortgage admitted liability for the total loss caused by fire if other companies who had insured the property before its conveyance and who had not been notified of the conveyance were not liable for their proportionate share of the loss, and agreed to pay the total loss without action if the grantees would first bring an action against the other companies which should be under their control, and should result in failure to recover any portion of the insurance, the insurers of grantees, though interested in the result of the action, were not parties in interest within the meaning of 3 Comp.

Laws 1915, § 12353, requiring every action to be prosecuted in the name of the real party in interest.

2. SAME—CONTROL OF ACTION DOES NOT CHANGE STATUS OF PARTIES. The fact that said insurance companies, by the terms of the agreement, were given control of the present action, did not change their status in any way.

3. SAME—STATUTE IN FORCE PART OF POLICY—REPEAL HAS NO EFFECT.
Where 2 Comp. Laws 1915, § 9481, providing that the breach of any condition of a fire insurance policy should not render it void if the insurer was not injured by such breach, was in force and effect when the policy in question was issued, it became a part of the policy, and its repeal thereafter prior to the date of the fire in no way affected the rights of the parties.

4. SAME—REPAIRS MADE BY ANOTHER DOES NOT AFFECT INSURED'S RIGHT TO RECOVER.
If insured mortgagee had a cause of action by reason of loss by fire which rendered the building unfit for use, she did not lose it by reason of the repairs being made by the mortgagors, and the fact that the written assignment of her right to collect from defendants was not executed until after the repairs had been made would not affect the right of recovery.

5. SAME—RIGHT TO RECOVER DEPENDENT UPON PROSECUTION RATHER THAN RESULT OF ACTION NO DEFENSE.
That plaintiffs' right to recover from the other insurance companies, under the agreement, is dependent upon the prosecution, and not the result, of this action against defendants, *held*, no defense.

Error to Wayne; Dingeman (Harry J.), J. Submitted February 7, 1922. (Docket No. 97.) Decided March 30, 1922.

Assumpsit by Louis W. Lindemann and others against the American Insurance Company of Newark, N. J., and others on certain policies of insurance. Judgment for defendants on a directed verdict. Plaintiffs bring error. Reversed.

*Stevenson, Carpenter, Butzel & Backus (Rockwell T. Gust,* of counsel), for appellants.

*Frederick J. Ward,* for appellees.

SHARPE, J.   On June 21, 1917, Emma Lindemann conveyed certain premises in Detroit to the plaintiffs, her sons, taking back a mortgage for $30,000.   She had theretofore secured insurance on the buildings thereon in the defendant companies in the sum of $10,000.   Notice of the transfer was not given to the companies.   On April 25, 1918, the plaintiffs effected insurance in their own names on the same buildings in the sum of $7,000, one-half in the Royal and one-half in the Continental Insurance Company.   On September 24, 1918, the buildings were damaged by fire. All the companies were notified, adjusters agreed upon and the loss fixed at $2,209.48, after which repairs were made by plaintiffs.   Proofs of loss were furnished. The defendant companies denied liability for the reason that they had not received notice of the transfer.   In June, 1919, the Royal and Continental companies admitting liability, each paid to plaintiffs $454.89, being their proportionate share of the loss if all the companies were liable to contribute thereto, in pursuance of an agreement (Exhibit 19) entered into between these companies and the plaintiffs.   By its terms, it was agreed that plaintiffs should begin suits against the defendant companies to recover their proportionate shares of the loss, one-half of the expenses thereof to be borne by the insurance companies.   It was further agreed that such suits should be under the supervision and control of the insurance companies, that they should "be solely responsible for the conduct thereof," and that in the event of a total or partial failure to recover, the insurance companies should pay to plaintiffs sufficient to fully cover their loss as fixed and interest thereon until payment.   Afterwards, and on

August 15, 1919, Emma Lindemann assigned to plaintiffs her right of action against the defendant companies and on September 8th these actions to recover therefor were begun.    An order consolidating them was made pursuant to stipulation of the parties.

'At the conclusion of the proofs, defendants moved for a directed verdict, assigning the following reasons therefor:

(1) The transfer of the premises without notice to the defendants.

(2) Owing to the repairs made by plaintiffs, the insured suffered no financial loss nor was her security impaired.

(3) By virtue of the agreement, the Royal and Continental companies are the real parties in interest.

(4) The plaintiffs are entitled to recover the balance of the loss under the agreement and this suit will not lie therefor.

The trial court directed a verdict for defendants for the third reason stated and judgment was entered thereon.    The assignments of error relate to such action and to certain claimed errors in the admission and rejection of testimony.

1. Was the verdict properly directed for the reason stated?    The action of the trial court was predicated upon section 12353, 3 Comp. Laws 1915, and our decision in, *Marshall & Ilsley Bank* v. *Mooney,* 205 Mich. 513.    This section reads, in part:

"Every action shall be prosecuted in the name of the real party in interest."

At the time Exhibit 19 was entered into, Emma Lindemann had a claim against the defendants under the policies issued to her, for which suit would lie. This was afterwards assigned to plaintiffs.    Plaintiffs also had a claim against the Royal and Continental companies, for which they might bring suit.    These companies apparently conceded their liability to pay the entire loss in case recovery of a proportionate share

could not be had as against defendants. To prevent litigation, the Royal and Continental agreed that if, suit against them be withheld until the liability of the defendants was determined, they would, in the event that defendants be held not liable, pay the balance of plaintiffs' claim against them without suit therefor. The avails of this suit, if successful, will go to the plaintiffs. These companies were interested in the result of the suit, but not parties in interest. They had no claim which they could then have prosecuted against the defendants. We do not think the fact that by the terms of the agreement they were given control of the present suit changed their status in any way. It is true that plaintiffs stood to recover from them perforce of the agreement if defeated in the suit. This, doubtless, was one of the reasons why these companies insisted on having control of the litigation. We do not think these insurance companies are the real parties in interest in this suit.

Neither do we think *Marshall & Ilsley Bank* v. *Mooney, supra,* controlling. In that case, certain directors of a corporation paid a note on which they, with the defendant Mooney, were indorsers to the bank to which it was payable. Defendant Mooney had secured his indorsement by a note and mortgage to the bank. On his failure to make contribution, they "turned the note and mortgage over to the bank for collection" and it commenced a foreclosure proceeding. The court said:

"Plaintiff does not pose in the bill of complaint as assignee, nominal party or in a representative capacity, but it does pose as the real party in interest. By the testimony it is disclosed that plaintiff had neither equitable nor legal title to defendant's note and mortgage when the action was commenced, or that it had any lien thereon. It would, therefore, seem that plaintiff has no such interest in the subject-matter of the controversy as would entitle it to relief."

Should a verdict have been directed for any of the other reasons stated?

2. The policies issued by defendants were all standard Michigan fire insurance policies and contained the usual provision as to forfeiture if a transfer of the property should be had without notice. At the date of their issuance, Act No. 128 of the Public Acts of 1911 (2 Comp. Laws 1915, § 9481) was in force and effect. It reads as follows:

"No policy of fire insurance shall hereafter be declared void by the insurer for the breach of any condition of the policy if the insurer has not been injured by such breach, or where a loss has not occurred during such breach, and by reason of such breach of condition."

This act was repealed in 1917 (Act No. 256, Pub. Acts 1917). It was, however, re-enacted in 1921 (Act No. 264, Pub. Acts 1921). It is the claim of the plaintiffs that this statute, being in force at the time the policies were issued, became in legal effect a part of each policy and its repeal prior to the date of the fire in no way affected the rights of the parties to the insurance contracts. We think this claim well founded. The act was in effect at the time the contract was entered into and the parties must be held to have contracted having its provisions in mind. The consideration was paid for a policy of insurance to which defendants could not claim a forfeiture for the reason stated. The rule is plainly stated in 26 C. J. p. 81:

"A contract of insurance is presumed to have been made with reference to existing statutes or ordinances affecting the contract. Such statutes or ordinances are a part of the contract, to be construed with the provisions of the policy, and control in case of a conflict."

Cases cited in the footnote will be found applicable. The contract thus having read into it the statutory provision is not affected by its repeal. As is said by

Justice COOLEY in his work on Constitutional Limitations (7th Ed.), p. 403:

"If any subsequent law affect to diminish the duty or to impair the right, it necessarily bears on the obligation of the contract in favor of one party to the injury of the other; hence   *   *   *   is directly obnoxious to the prohibition of the Constitution."

3. *Effect of repairs made.* The fire rendered the building unfit for use. The damage was largely to the roof. After adjustment of the loss, the owners were justified in its quick repair. If the insured in these policies had a cause of action on account of the loss due to the fire, it seems clear that she did not lose it by reason of the repairs having been made. The fact that the written assignment of her right to collect from defendants was not executed until after the repairs had been made would not affect the right of recovery. The defendants' contracts provide for payment in case of loss or damage by fire. Unless they choose to make repairs, they have no concern as to who makes them and cannot escape liability because made, as in this case, before suit brought.

4. Plaintiffs' right to recover under the agreement is dependent upon the prosecution while not the result of this suit. Defendants cannot rely on this as a defense.

Counsel for the plaintiffs ask that under the arrangement of counsel relative to the action of the court in directing a verdict we, in reversing, should order judgment entered for the plaintiffs. We find no such specific stipulation nor admission of counsel as will justify us in doing so.

The judgment is reversed and a new trial ordered, with costs to plaintiffs.

FELLOWS, C. J., and WIEST, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.